IN THE UNITED STATES DISTRICT COURT FOR
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

| | | |
|---|---|---|
| **EDNA D. RANGOLAN** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| v. | * | CIVIL No.: 8:05-cv-02723-AW |
| | * | |
| **KMART CORPORATION** | * | |
| | * | |
| **Defendant.** | * | |
| | **** | |

## MEMORANDUM OPINION

In this action, Edna D. Rangolan ("Plaintiff") filed a suit against Kmart Corporation ("Kmart" or "Defendant") alleging violations of her civil rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Alleged violations include discrimination and harassment based on race and sex, as well as retaliation. Before the court is Kmart's Motion for Summary Judgment. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons set forth below, the Court will grant Kmart's Motion for Summary Judgment.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is an African American female. She worked for Kmart at its store located at 14014 Connecticut Ave, Silver Spring, Maryland from November 2001 until September 2002, when she resigned from her position, and again from July 16, 2003 until her termination on February 16, 2005. From May 12, 2004 until February 16, 2005, Plaintiff was a full-time employee and worked the day shift in the Fashion Accessories department.

Kmart has policies against discrimination, harassment, and sexual harassment in the workplace, and these policies are published in its "Associate Handbook," which is distributed to all new employees. Plaintiff received a handbook upon commencing her job at Kmart in 2001. These policies provide that employees may file complaints of harassment to their Store Manager, District Manager, to the Divisional Human Resources Director, or to the Kmart Resources Center or the Business Ethics and Compliance Hotline.

Plaintiff alleges that during the period from May 12, 2004 to February 16, 2005 she was harassed because of her race and her sex by coworkers and management and was eventually discharged. She claims that she was given no "satisfactory reason for the harassment, but was told that she was discharged for using profanity." Plaintiff asserts that during this period of employment, David Yingling ("Yingling") was employed by Kmart as a supervisor/manager and that Plaintiff and Yingling, who is married, had an "illicit affair" over a period of 14 months.[1] Plaintiff was aware that Yingling had affairs with six other female employees during this time period. Plaintiff alleges that she was subjected to retaliation by Kmart and its managers due to her relationship with Yingling and because of "Yingling's awareness that Plaintiff was aware that he had sexual relations with other female employees." She claims that her manager, Sharon Shrader ("Shrader"), was aware of her relations with Yingling. Plaintiff claims that Yingling and Shrader "deviated from Kmart procedures by alleging and supporting claims of harassment against." Plaintiff charges that the discriminatory acts of her coworkers and management, which she fails to describe in greater detail, created a hostile work environment and have caused her mental and emotional suffering.

---

[1] Throughout her Complaint, Plaintiff mistakenly refers to David Yingling as "David Winging."

Defendant set forth, in its Motion for Summary Judgment, a Statement of Undisputed Material Facts. Plaintiff's response to the Motion failed to object to or contradict any of the alleged "undisputed facts" and the Court shall, therefore, consider these facts to accurately portray the nature and course of events. These facts include the following: during the course of Plaintiff's second stint with Kmart, Shrader received reports that Plaintiff was involved in altercations with other employees. Two of these incidents were recorded by Shrader on written counsel forms that were signed by Plaintiff. (Def.'s Ex. 1.) The first of these involved a conflict with a female, "Asian" co-worker while she and Plaintiff were unloading a truck in the rear of the store. After this incident, Plaintiff was counseled and given a written warning. The second incident, which occurred on February 16, 2005, involved an altercation between Plaintiff and a male, African-American employee, Avonne Wade ("Wade"), while the two employees unloaded a truck at the rear of the store. Plaintiff was terminated after this incident, while Wade was counseled and given a written warning.

Prior to terminating Plaintiff, Shrader met with Plaintiff, Henry Miller (an African-American employee and Asset Protection Coach who had reported the incident to Shrader), and another area manager, Sherry Eckberg. During this meeting, Plaintiff never suggested that she had been harassed, discriminated against or retaliated against by fellow employees or management. Furthermore, in two subsequent meetings with Shrader, in which Plaintiff sought to convince Shrader to reemploy her, Plaintiff failed to mention such allegations. (Pl.'s Dep. 143-44, 149:9-21, 150:1-9, March 14, 2006; Def.'s Ex. 2, Shrader Decl. 4; Def.'s Ex. 3, Miller Decl. 3.) In fact, according to her own testimony, which contradicts her original Complaint, at no time during either period of employment with Kmart did Plaintiff complain to Kmart managers, or through other methods described in the "Associate

3

Handbook," of discrimination, harassment, or retaliation. (Pl.'s Dep. 143-144, 147-149, 150:1-9; Def.'s Ex. 2, Shrader Decl., 5.) Additionally, Plaintiff never filed a charge or complaint of discrimination, harassment, or retaliation with any fair employment practices agency, including the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Human Relations, during her terms of employment at Kmart. (Compl. 6; Pl.'s Dep. 63-64, 147-48, 157:5-14.)[2]

On April 5, 2005, after her termination, Plaintiff filed a charge with the EEOC, through the Maryland Commission on Human Relations, alleging that she was discriminated against and harassed because of her race and sex in violation of Title VII. She failed to mention in her EEOC complaint a charge of retaliation in violation of this statute, nor did she amend her complaint to include this allegation and, on April 21, 2005, the EEOC determined that it was "unable to conclude that the information obtained establishes violations of the statutes." (Def.'s Ex. 6, Pl.'s EEOC Charge; Def.'s Ex. 7, EEOC Dismissal and Notice of Rights.)

On July 20, 2005, Plaintiff brought this action against Kmart in the Circuit Court for Montgomery County. On September, 30, 2005, Defendant removed this action to federal court on the basis of federal question jurisdiction. Defendant filed its answer to the Complaint on October 4, 2005 and a Motion for Summary Judgment on May 26, 2006. Plaintiff filed a Response in

---

[2] Plaintiff alleges in her Complaint that she "filed formal and supplemental complaints of discrimination" on September 11, 2003 and October 9, 2003, but she provided no evidence to corroborate this claim and, furthermore, contradicted this assertion in her deposition, in which she stated that at no time during her employment with Kmart did she complain to managers or to others about discrimination or harassment by others, nor did she file a formal complaint with the EEOC. (Pl.'s Dep. 63-64, 147-48, 157:5-14, 176-77; Def.'s Ex. 2, Shrader Decl. 5.)

Opposition to Defendant's Motion For Summary Judgment on June 27, 2006, and Defendant filed a Reply to Plaintiff's Opposition on July 10, 2006.

**II.     ANALYSIS**

    **A.     SUMMARY JUDGMENT**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F.Supp.2d 751, 756 (D. Md. 1998). In other words, summary judgment should be granted "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1).

In reviewing a motion for summary judgment, the court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). However, while the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). As the Supreme Court held in *Celotex*, a plaintiff must establish the existence of specific facts to show that there is

a genuine issue for trial. A mere scintilla of evidence is not enough to create a fact issue. *Barwick v. Celotex Corp.*, 736 F.2d 946 (4th Cir. 1984). There must be "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

### B. PLAINTIFF CANNOT PROVE THAT KMART DISCRIMINATED AGAINST HER BECAUSE OF HER RACE OR SEX.

In order to succeed on a race-based or sex-based discrimination claim under Title VII, Plaintiff must establish a *prima facie* case of discrimination by either showing direct evidence of discrimination or, where a claim is based on circumstantial evidence, by applying the burden shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* rule provides that once the Plaintiff has established a *prima facie* case, the burden then shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the challenged employment action. *Id.* at 802. If the employer is able to articulate a non-discriminatory reason for its action, the Plaintiff must prove that the employer's purportedly legitimate reason is actually a pretext for discrimination. *Id.* at 804. Pretext can be established by showing that the employer's explanation is false or lacks credibility or by showing other circumstantial evidence sufficiently indicative of a history of discrimination. *Id.*

In the present case, Plaintiff failed to allege any specific incidents that would constitute direct evidence of race-based or sex-based discrimination. When asked to explain her basis for believing that Shrader terminated her because of her race, she responded "She was a white female. I was a black female. She felt I should be underneath her." (Pl.'s Dep. 161:16-18.) Plaintiff also admitted that she had never heard Shrader speak in a racially insensitive manner, which could also serve as a sign of racially-based prejudice. (Pl.'s Dep. 162:8-21, 163:1-4.)

6

Given that Plaintiff asserted no direct evidence that she was subjected to discrimination because she is an African American female, Plaintiff must make out a *prima facie* case, based on inference and circumstantial evidence, that Kmart's actions were discriminatory, and then show that there was no legitimate, non-discriminatory reason for the action by applying the *McDonnell Douglas* paradigm. Because disciplinary action on the part of Kmart is being challenged in this case, the Court will apply a Fourth Circuit test that provides that in order to make out a *prima facie* case of discriminatory discipline, an employee must show "(1) that he is a member of a class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to the misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees." *Cook v. CSX Transportation Co.*, 988 F.2d 507 (4th Cir. 1993) (*citing Moore v. City of Charlotte*, 754 F.2d 1100 (4th Cir. 1985)). In applying this test, courts have emphasized that the "other employees" with whom the plaintiff is comparing himself should be "similarly situated employees," *Erksine v. Bd. of Ed. of P.G. County*, 197 F. Supp. 2d 399, 405-06 (D. Md. 2002), and that a plaintiff may compare "only discipline imposed for like offenses." *Cook*, 988 F.2d at 511.

In the case at bar, Plaintiff is protected from race-based and sex-based discrimination under Title VII. Plaintiff, however, failed to present any evidence that other similarly situated non-African American employees or male employees have participated in similar conduct to that which led to disciplinary measures taken against her, i.e. engaging in a series of altercations with fellow employees, and have been punished in a less severe manner. The only incident on the record in which a fellow employee was punished less severely for conduct similar to Plaintiff's was the incident involving Plaintiff and Avonne Wade ("Wade") while the two were unloading a truck

7

outside the store. Wade is an African American male. Plaintiff was terminated after engaging in this confrontation, while Wade was given a final written warning. Plaintiff cannot successfully argue discriminatory discipline under the *Cook* test, however, as Wade and Plaintiff were not "similarly situated." *Erksine*, 197 F.Supp. 2d at 405-06. While Plaintiff had been issued a final warning by Shrader on January 24, 2005, (Def.'s Ex. 1, Copy of Written Warning), Wade, according to Kmart and undisputed by Plaintiff, had no prior record of engaging in altercations with fellow employees and had received no warning of termination for involvement in such conduct. (Def.'s Ex. 2, Shrader Decl. 6.) Plaintiff has not attempted to identify other similarly situated non-African American or male employees who were treated more favorably than herself by Shrader. Given that Plaintiff has failed to assert a history of inequitable punishment for employees who fall within a protected class versus those who do not, no *prima facie* case of discrimination can be established and Plaintiff cannot withstand a Motion for Summary Judgment on this claim.

Even assuming *arguendo* that Plaintiff could establish a *prima facie* case of discrimination based on race or sex, Kmart has presented convincing evidence that Shrader terminated Plaintiff for legitimate, non-discriminatory reasons. Shrader stated in her declaration that she had received several reports of Plaintiff engaging in and initiating altercations with other employees. Shrader also explained that she had given Plaintiff a written warning after one such altercation on January 24th, (Def.'s Ex. 1; Def.'s Ex. 2, Shrader Decl.), which advised Plaintiff that future conduct of this sort could result in her termination. On February 16th, according to Shrader's declaration and a second written warning signed by the Plaintiff, Plaintiff was again reprimanded for agressively arguing with Wade. (Def.'s Ex. 1; Def.'s Ex. 2, Shrader Decl.) Given Plaintiff's history of engaging in verbal confrontations with her co-workers, and the fact that she had been warned that she may be

8

terminated if such behavior persisted, Shrader acted reasonably when she terminated Plaintiff on February 16th. Plaintiff has failed to produce any evidence that Kmart's explanation for termination is pretextual and, therefore, Plaintiff's claim that she was terminated due to her race and sex cannot withstand Defendant's Motion for Summary Judgment. For the aforementioned reasons, summary judgment will be granted to Defendant on the issues of race and sex-based discrimination in violation of Title VII.

### C. PLAINTIFF CANNOT PROVE HARASSMENT BASED UPON HER RACE AND SEX.

To survive summary judgment on her claims of sex-based and race-based harassment, Plaintiff must demonstrate that a reasonable jury could find that Plaintiff was subjected to harassment and that this harassment was (1) unwelcome; (2) based on race or sex; (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) that there is some basis for imposing liability on the employer. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001). The degree of hostility or abuse to which a plaintiff was exposed should be determined by examining the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity . . . and whether it unreasonably interferes with the employee's work performance." *Id.* at 184. In order for the conduct to be actionable, "it must create an objectively hostile or abusive work environment, and the victim must also perceive the work environment to be abusive." *Id.*

In this case, Plaintiff has failed to allege specific harassing behavior by coworkers or management and has in no way demonstrated that she was subject to a hostile or abusive work environment. Plaintiff's Complaint asserted only that "she was harassed and discharged because of her race, Black and sex, female," and that she was harassed by other employees and management

because of her "illicit affair" with a Kmart manager, David Yingling. (Compl. ¶ 16.) Plaintiff provided no further details outlining specific incidents to support these allegations. When asked during the deposition who had harassed her, Plaintiff responded that "it was hard to say" but later added, without elaborating, that she was harassed by "other employees and the store manager." When asked directly if she felt she had been harassed by Shrader, Plaintiff responded: "In a way. She thought I had feelings what was going on between what was happening to somebody else in the store. I could be wrong. I don't know." (P.'s Dep. 31:11-14.) Plaintiff provided no specific examples of how Shrader's knowledge of her "feelings" translated into harassing behavior. When asked if coworkers ever made fun of her, teased her or told jokes about her, Plaintiff responded "If they did, it probably was not noticeable. It was going behind my back." (P.'s Dep. 102:3-10.) The sum of these allegations fails to suggest that other employees were harassing Plaintiff, let alone that they were engaging in conduct so severe as to alter the atmosphere and create an abusive environment.

Plaintiff's vague allegations of harassment are further weakened by the fact that, during her terms of employment with Kmart, she never complained to any manager or to the company that she was being harassed because of her race, sex, or for any other reason, (P.'s Dep. 147-48, 176-77.). Plaintiff failed to voice her complaints, despite the fact that she was aware that she could have called the Kmart hotline to report such conduct. (P.'s Dep. 176-77.) Furthermore, Plaintiff failed to raise allegations of harassment when she met with both Shrader and the District Manager, Mr. Caughey, to discuss possibilities of reemployment. (P.'s Dep. 143:7-21, 144:1-3, 147-49, 150:1-9; Def.'s Ex. 2; Def.'s Ex. 3; Def.'s Ex. 5; Shrader Decl. 4; Miller Decl. 3; Caughey Decl. 2.)

Given that the Plaintiff has failed to allege or set forth any evidence of specific allegations of harassment, the Court need not consider the other elements set forth in *Spriggs*. For the

aforementioned reasons, the Court will grant Defendant's motion for summary judgment on the issue of sex and race-based harassment.

> **D.     PLAINTIFF CANNOT MAINTAIN A RETALIATION CLAIM BECAUSE SHE FAILED TO EXHAUST HER ADMINISTRATIVE REMEDIES WITH REGARDS TO THIS CLAIM.**

Before a plaintiff can file suit under Title VII, she must exhaust her administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000(e). The Fourth Circuit has explained that "[a]n administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981). In applying this principle in *Bryant v. Bell Atlantic Maryland, Inc.*, 288 F.3d 124, 132-33 (4th Cir. 2002), the Fourth Circuit refused to analyze the merits of the plaintiff's retaliation, color, and sex discrimination claims, finding that the scope of the plaintiff's complaint exceeded the limits set by the allegations of his administrative complaint, wherein the plaintiff had alleged only discrimination based on race. The court's reasoning in *Bryant* was that an administrative investigation of the previously unalleged claims could not reasonably have been expected to occur and, therefore, the court could not analyze the merits of the unexplored claim. *Id.* at 133. The Fourth Circuit has held, however, that a plaintiff who has previously filed an administrative charge need not file, prior to filing suit, a separate administrative charge that asserts retaliation *for filing the initial charge*. *See Nealon v. Stone*, 958 F.2d 584 (4th Cir. 1992).

In this case, Plaintiff failed to exhaust her administrative remedies with respect to her Title VII claim of retaliation. The record indicates that Plaintiff first filed a charge with the EEOC,

through the Maryland Commission on Human Relations, seven weeks after her termination, on April 5, 2005. In her charge, Plaintiff alleged only that she was discriminated against and harassed because of her sex and her race. Plaintiff failed to allege in her EEOC charge that she was subject to retaliation in violation of Title VII and failed to amend her charge to include such a claim prior to the EEOC's determination that "it was unable to conclude that the information obtained establishes violations of the statutes." (Def.'s Ex. 6; Pl.'s EEOC Charge; Def.'s Ex. 7, EEOC Dismissal and Notice of Rights.) Plaintiff's retaliation claim is not saved by the exception set forth in *Nealon*, as Plaintiff did not file her charge with the EEOC until after termination and, therefore, cannot claim that she was subject to retaliation because she had filed a previous EEOC charge. Because Plaintiff failed to exhaust her administrative remedies as to her retaliation claim, the court will grant summary judgment to Defendant on the issue of retaliation.

### E. PLAINTIFF'S REQUEST FOR A TRANSLATOR OR INTERPRETER IS UNTIMELY AND PLAINTIFF HAS NOT DEMONSTRATED A GENUINE NEED FOR SUCH ASSISTANCE.

Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment in no way responded to the arguments and evidence set forth in Defendant's Motion, nor did it present new arguments or evidence in support of Plaintiff's allegations. Instead, Plaintiff's response requested that an interpreter or translator be provided for the Plaintiff, noting "it appears that Plaintiff has difficulty with speech, hearing, understanding and comprehending questions, and responding to the same, the situation being observed and shared with opposing Counsel."

The Court is dumbfounded by this request. Not only has Plaintiff's attorney waited for a Response to a Motion for Summary Judgment to raise issues of Plaintiff's inability to speak, hear, and comprehend questions, but he has done so despite a record that offers not a scintilla of evidence

that such disabilities exist, and which indisputably indicates that Plaintiff's first language is English and that Plaintiff was capable of sitting through a two-hour long deposition in which she listened to, understood, and responded to opposing counsel's questions in English.

Plaintiff, by failing to present more than a scintilla of evidence to support her vague claims of discrimination and harassment, has not demonstrated that there is a genuine issue of material fact in this case. Her failure to introduce evidence to buttress her claims under Title VII has led the court to conclude that there is not sufficient evidence for a jury to return a verdict in her favor. Plaintiff's silence in her opposition brief with regards to the truth of her claims, coupled with what seems to be a completely frivolous assertion that Plaintiff is in need of an interpreter, highlights the groundless nature of her claims and reinforces the Court's holding that Plaintiff's claim cannot withstand a Motion for Summary Judgment.

### III.   CONCLUSION

For all the aforementioned reasons, the Court will GRANT Defendant's Motion for Summary Judgment [28]. An order consistent with this opinion will follow.

Date: July 25, 2006                                    /s/
                                                  Alexander Williams, Jr.
                                                  United States District Court